# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATRINA FIALA, : | |
| Plaintiff : | |
| : | Civil Action No. 1:07-cv-02041 |
| v. : | (Chief Judge Kane) |
| : | |
| DAVID BOGDANOVIC, DONALD : | |
| BRINK, JASON UMBERGER, and : | |
| TOWNSHIP OF SWATARA, : | |
| Defendants : | |

## MEMORANDUM

Before the Court is Defendants' motion for summary judgment (Doc. No. 23). In their motion, Defendants argue that the case should be dismissed and judgment entered in their favor because Plaintiff Fiala fails to support an Equal Protection claim against them. For the reasons that follow, the motion will be granted in part and denied in part.

## I. BACKGROUND

In July of 2005, Plaintiff Katrina Fiala was hired as a probationary police officer for Swatara Township. (Doc. No. 25 ¶¶ 1-2.) Prior to beginning her employment at the police department, Plaintiff attended policy academy training at Harrisburg Area Community College along with three other prospective officers, Eric Morris, Ryan Williamson, and Jason Lex. (Doc. No. 24-3 at 9.) After attending the academy but prior to beginning official duty, Plaintiff attended a required one and one half week training period that included training on the Township's sexual harassment and reporting policy. (Doc. No. 25 ¶ 6-7.)

Upon conclusion of the mandatory training period, Plaintiff was assigned to "street duty" under field training officer Patrolman Scott Neal. (Doc. No. 23 ¶ 12.) Although she believes he

1

treated all trainees equally on the basis of gender, Plaintiff alleges that she was disadvantaged during her field training because Officer Neal did not spend adequate time training her "on the streets." (Doc. No. 24-3 at 10-11.) Plaintiff approached Officer Neal about her training concerns, and he provided her with more "on the street" training. (Id.) Plaintiff had other problems during field training, however. Plaintiff was late to work during field training three times, December 21, 2005, December 25, 2005, and February 10, 2006, which resulted in her being counseled as to the importance of arriving for duty on time. (Doc. No. 25 ¶¶ 11-12.) She arrived late for work again on May 24, 2006, and on June 7, 2006. (Doc. No. 25 ¶¶ 22-23.) Defendant David Bogdanovic, Chief of Swatara Township Police Department, issued an oral reprimand and counseled Plaintiff in response to these latter incidents of tardiness. (Doc. No. 25 ¶¶ 22-24.) Also in May and June of 2006, Plaintiff was counseled regarding her to a failure to complete and submit her case reports on time. (Doc. No. 25 ¶ 19.) In September of 2006, Plaintiff misplaced a cell phone with sensitive internal department numbers while on duty. (Doc. No. 25 ¶¶ 27, 29.) Sargeant Zimmerman spoke with Plaintiff regarding ongoing concerns about her job performance, her tardiness, the untimeliness of her casework, and her inattention during roll call. (Doc. No. 25 ¶ 30.)

In October of 2006, Plaintiff initiated a traffic stop on a vehicle she observed driving erratically. (Doc. No. 24-3 at 37.) In running a search of the license plate number from her patrol vehicle, she discovered it was her ex-boyfriend, Joe Pavucsko's, car. (Doc. No. 24-3 at 37.) Pavucsko had previously attempted to break into Plaintiff's home and had harassed her by calling her at work. (Doc. No. 24-3 at 36-37.) In light of her past interactions with Pavucsko, Plaintiff called for assistance to have other officers conduct the traffic stop. (Doc. No. 24-3 at 37.)

Pavucsko responded to this incident with a complaint to the department that Plaintiff was harassing him. Sargeant Farling investigated the incident, but Plaintiff was not disciplined. (Doc. No 24-3 at 38.)

Plaintiff alleges that Defendant Jason Umberger, Deputy Chief of Swatara Township Police Department, harassed her by calling her at home "in a very loud tone and manner" on her day off and yelling at her for having a long distance phone rather than a local phone number. (Doc. No. 24-3 at 39.) Defendant Umberger also allegedly attempted to write her up for not following the chain of command, but Defendant Umberger's complaint was unsubstantiated and did not result in a written complaint against Plaintiff. (Doc. No. 24-3 at 39.) Defendant Umberger also referred to Plaintiff's personality as unprofessional, describing it as too "bubbly," and repeatedly raised her ex-boyfriend's conduct in conversations. (Doc. No. 24-3 at 17, 36.)

Plaintiff alleges that Defendant Donald Brink, a Sargeant at the Swatara Township Police Department, harassed her as well. During taser training, Corporal Gallick suggested to Defendant Brink that he initiate a taser hit into Plaintiff's buttocks instead of her back or leg, where all other trainees had been hit. (Doc. No. 24-3 at 40.) He also referred to Plaintiff and the other female officers as the "PMS squad" when working together, suggesting that they would be less likely to adequately perform their duties at certain times of the month. (Doc. No. 24-3 at 41-42.)

Plaintiff alleges that Defendant Bogdanovic harassed her on several occasions. Specifically, he "repeatedly asked about [her] dating situation" by inquiring into whether she "was interested in older men." (Doc. No. 24-3 at 42.) He then allegedly invited himself inside of her home for a tour while they were on patrol duty. (Doc. No. 24-3 at 43.) On another occasion while Plaintiff was on patrol duty, Defendant Bogdanovic asked her to drive him to pick up his

3

dry-cleaning. (Doc. No. 24-3 at 45.) Once in the car, however, he directed Plaintiff to a Serbian church and the pastor's house adjacent to the church. (Id.) He then showed Plaintiff a picture of the pastor's son, a man in whom he thought Plaintiff might be romantically interested, and introduced her to the pastor. (Doc. No. 24-3 at 46.) Plaintiff was uncomfortable with the situation and asked to return to the station to recharge her flashlight. (Id.) Defendant Bogdanovic also allegedly initiated a workplace discussion with her about a practice called "anal bleaching," allegedly done by participants of the adult film industry. (Doc. No. 24-3 at 44.) On two occasions, Defendant Bogdanovic gave Plaintiff a gift card: once after Defendant Umberger called her at home regarding her telephone number, and also after he had questioned her about dating one of his friends. (Doc. No. 24-3 at 40, 42.)

Though Plaintiff had been informed of the sexual harassment policy at the department and felt Defendants' actions were harassing, she did not complain about any of the aforementioned events because she was still a probationary officer and was "afraid that it would somehow affect [her] job." (Doc. No. 24-3 at 46.) On November 16, 2006, when Plaintiff's probationary period was to expire, she was offered a six-month extension of her probationary period. (Doc. No. 25 ¶ 31.) Although she did not agree that her performance merited an extension of the probationary period, she accepted the extension because she thought it was better than being terminated from her position. (Doc. No. 24-3 at 20.) Plaintiff was advised that her probation was being extended because of her lateness, the problems with her reports, and the problems with her ex-boyfriend. (Doc. No. 29-3 at 20.) Although Plaintiff admits that she was tardy and had some problems getting reports in on time, she does not believe that these were the real reasons for the extension of her probation. (Doc. No. 24-3 at 20, 34.) Plaintiff reported late

4

for work again on January 21, 2007, and she was terminated from employment on February 14, 2007. (Doc. No. 25 ¶¶ 35, 39.)

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is material if it might affect the outcome of the suit under the applicable law, and it is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). At summary judgment, the inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law. Id. at 251-52. In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322.

With respect to the sufficiency of the evidence that the nonmoving party must provide, a court should grant summary judgment where the nonmovant's evidence is merely colorable, conclusory, or speculative. Anderson, 477 U.S. at 249-50. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

### III. DISCUSSION

To bring a successful gender discrimination claim pursuant to 42 U.S.C. § 1983 for violation of the Equal Protection Clause, a plaintiff must show 1) that she was treated differently from similarly situated employees and 2) that this disparate treatment was based on her gender. Andrews v. City of Phila., 895 F.2d 1469, 1479 (3d Cir. 1990); Keenan v. City of Phila., 983 F.2d 459 (3d Cir. 1992). To be similarly situated, persons must be "alike in all relevant aspects." Startzell v. City of Philadelphia, 533 F.3d 183, 203 (3d Cir. 2008) (citing Nordlinger v. Hahn, 505 U.S. 1, 10 (1992)). The plaintiff must also show that the discrimination was purposeful. Shuman ex rel. Shertzer v. Penn Manor Sch. Dist., 422 F.3d 141, 151 (3d Cir. 2005); Andrews, 895 F.2d at 1479. Although the Third Circuit Court of Appeals has not specifically so held, many other circuits have reasoned that claims for employment discrimination under § 1983 are treated similarly to those brought under Title VII. E.g., Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006) ("[T]he analysis for [hostile work environment claims brought under § 1983] is similar to that used for employment discrimination claims brought under Title VII, the difference being that

6

a § 1983 claim, unlike a Title VII claim, can be brought against individuals."); Smith v. City of Salem, 378 F.3d 566, 577 (6th Cir. 2004) ("[T]he showing a plaintiff must make to recover on a disparate treatment claim under Title VII mirrors that which must be made to recover on an equal protection claim under section § 1983."); Hardin v. Stynchcomb, 691 F.2d 1364, 1369 n.16 (11th Cir. 1982) ("When section 1983 is used as a parallel remedy for violation . . . of Title VII the elements of the two causes of action are the same."); Whiting v. Jackson State Univ., 616 F.2d 116, 121 (5th Cir. 1980) (same).

Defendants argue that Plaintiff's claims must be dismissed because she has failed to support the existence of a constitutional violation in that she has failed to show that any similarly situated employee was treated differently from her.[1] By contrast, Plaintiff argues that material questions of fact exist to demonstrate that she was discriminated against on the basis of her gender. She alleges that she was trained inadequately by Officer Neal, she was criticized for being too "bubbly" by Defendant Umberger; she was criticized for her ex-boyfriend's harassing calls at work; she was purposefully "tasered" in a "private or intimate part of her body" while male officers were "tasered" on their backs; her probation was extended and she was terminated for being tardy to work; she was continually subjected to dating inquiries by Defendant Bogdanovic; and Defendant Brink referred to her squad as the "PMS squad." Plaintiff's allegations are best taken as two claims: 1) that Defendants' conduct created a sexually harassing

---

[1]Plaintiff never explicitly names a group of employees or points to a specific employee who was treated differently from her. In her brief in opposition to the present motion, she only suggests that she was treated differently from "the males" at the Swatara Township Police Department. (Doc. No. 30 at 3, 9.) In fact, she puts the burden on Defendants to show that another group was treated similarly to her: "There is no evidence that the males were similarly treated." (Id.)

7

hostile work environment so pervasive as to constitute intentional discrimination and 2) that the extension of her probationary period and eventual termination were caused by intentional discrimination on the basis of her gender. The Court takes up the latter claim first.

**A. Probation Extension**

To support her claim that the probationary period was extended because she is a woman, Plaintiff generically argues that the evidence of record creates a material fact as to whether she was treated differently from other males. With respect to the extension of her probation, Plaintiff admits the occurrence of the reasons Defendants offer for her probation extension and termination: she was tardy to work on multiple occasions, and she had turned in some reports late. Notwithstanding these admissions, she asserts that the real reasons for the extension of her probation were that she was discriminatorily blamed for being the victim of harassment at the hands of her ex-boyfriend and that her personality was too feminine, described as "bubbly." Although Plaintiff may have raised a question of fact, it is not material unless Plaintiff points to a similarly situated man or group of men who received better treatment. Both the Equal Protection Clause analysis itself and the standard for disparate treatment claims brought under Title VII require a showing that Plaintiff was treated differently from a similarly situated group. See, McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).[2] To be similarly situated, a comparator must be alike Plaintiff "in all relevant aspects." Startzell, 533 F.3d at 203. Yet, "[t]here is no precise formula to determine whether an individual is similarly situated to

---

[2]To state a disparate treatment claim under Title VII, a plaintiff can state a prima facie case for discrimination by showing 1) that she is a member of a protected class 2) that she is qualified for the position 3) that she suffered an adverse employment action and 4) that similarly situated non-protected members were treated more favorably. McDonnell Douglas, 411 U.S. at 802.

comparators," and it is generally a question of fact for the jury. McDonald v. Village of Winnetka, 371 F.3d 992, 1002 (7th Cir. 2004) (collecting cases from various circuits on the determination of whether a plaintiff has shown herself to be similarly situated). Nonetheless, summary judgment is appropriate where there is no evidence from which a jury could conclude the parties were similarly situated.

To present enough evidence from which a reasonable jury could find for Plaintiff on this question, Plaintiff must show, at a bare minimum, that a similarly situated male employee was treated more favorably. Plaintiff may show, for example, that a male employee with like performance deficiencies was not disciplined as she was, or that a man with some performance lapses like hers was nonetheless promoted to permanent employment. Plaintiff points to no such evidence of record. To address this critical requirement, Plaintiff points to the testimony of Officer Roberta Pisle. Pisle testifies only that various other male officers were tardy at times, and that to her knowledge, they suffered no disciplinary action. Officer Pisle offers that she is aware of several male employees who were late to work, some only rarely, and others, "dozens" of times. (Doc. No. 30-10 at 4-6.) Officer Pisle's testimony, however, falls short of establishing that any of the male officers were similarly situated to Plaintiff. The record is silent on whether those officers were tardy as probationary employees, whether they actually were or were not disciplined for being tardy, or whether their tardiness was comparable to Plaintiff's. Moreover, Plaintiff does not establish that Officer Pisle would have known about the discipline received by any other officer for his tardiness, so that her failure to be aware of any discipline does not support an inference that no discipline occurred. Plaintiff has not produced evidence sufficient to support her claim that her probationary period was discriminatorily extended because she has not

9

provided evidence that a similarly situated male employee was treated differently. See, Shuman ex rel Shertzer v. Penn Manor Sch. Dist, 422 F.3d 141, 151 (3d Cir. 2005) (dismissing § 1983 Equal Protection argument because the plaintiff and the comparator were not similarly situated); Hill v. Borough of Kutztown, 455 F.3d 225 (3d Cir. 2006) ("[Plaintiff's] claim must fail because he does not allege the existence of similarly situated individuals."). Accordingly, Defendants are entitled to summary judgment on this aspect of Plaintiff's claim.

### B. Sexually Harassing Work Environment

Although Defendants did not address Plaintiff's hostile work environment claim in their initial brief in support of summary judgment, Defendants argue in their reply brief that Plaintiff has waived her hostile work environment claim. Alternatively, Defendants argue that the claim must be dismissed because she did not bring the action pursuant to Title VII. Neither of these contentions are correct. Plaintiff has never waived the issue, as she specifically alleged a hostile work environment claim under the Equal Protection Clause in her Amended Complaint. (Doc. No. 15 ¶¶ 12-14.) She has supported this claim with facts in her brief in opposition to Defendants' motion for summary judgment. Moreover, hostile environment claims are actionable under the Equal Protection Clause in addition to under Title VII. See, Andrews, 895 F.2d at 1482 (3d Cir. 1990) (affirming jury verdict against the defendants in § 1983 hostile environment sexual discrimination claim and remanding Title VII verdict to the district court to consider in light of jury verdict on § 1983 claim).

Considering whether Plaintiff has made a prima facie case under the Equal Protection Clause, the Court again begins with a determination whether she has shown similarly situated

persons who received different treatment.[3] With a broad claim such as a hostile work environment claim, any male employee at the police department who was not subjected to gender-based harassment could be similarly situated because the validity of a supervisor's sexually harassing actions would not differ relative to Plaintiff's status as a probationary or tardy employee. Thus, an individual need only work at the Swatara Police Department and be male to have the "relevant" characteristics to be similarly situated to Plaintiff on this claim. Although Plaintiff again does not point to a specific male she claims to be similarly situated, her briefs and the testimony presented support the fact that no male was subject to similar harassment. She indicates that no male was subject to a taser hit in his private or intimate parts. (Doc. No. 24-3 at 40.) She has offered evidence that no one else was asked about their dating situation, subject to the assumed familiarity of an unsolicited visit to their home during work hours, offered gift cards, and questioned about sexual practices in the adult film industry by Defendant Bogdonavic. (Doc. No. 24-3 at 42-46.) That the derogatory, gender-specific terms used by Defendant Brink and Umberger were only applied to women is self-explanatory. See Andrews, 895 F.3d at 1482 n.3 ("The intent to discriminate on the basis of sex in cases involving sexual propositions,

---

[3] A showing that similarly situated persons were treated more favorably is not required under Title VII in a hostile environment claim. The Third Circuit has established a five-factor test that a plaintiff must meet to establish a hostile work environment claim under Title VII: "(1) the employee suffered intentional discrimination because of their sex, (2) the discrimination was pervasive and regular, (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position, and (5) the existence of respondeat superior liability." Weston v. Pennsylvania, 251 F.3d 420, 426 (3d Cir. 2001) (quoting Andrews v. City of Philadelphia, 895 F.2d 1469, 1482 (3d Cir. 1990)). However, given that Plaintiff does not refute Defendants' recitation of the law, that the law is not entirely clear in the Third Circuit on this issue, and that the Court finds sufficient facts from which a jury could conclude that similarly situated males were treated differently, the Court need not make the determination whether it applies at this point.

innuendo, pornographic materials, or sexual derogatory language is implicit."). Thus, Plaintiff has adequately stated a claim under the Equal Protection Clause as the law was articulated by Defendants–a reasonable jury could conclude from the evidence of record that she was intentionally treated less favorably on the basis of her gender than male officers at the Swatara Township Police Department.

Moreover, Plaintiff has provided evidence sufficient to support a prima facie sexual harassment claim as required by Title VII. The Third Circuit has established a five-factor test that a plaintiff must meet to establish a hostile work environment claim under Title VII: "(1) the employee suffered intentional discrimination because of their sex, (2) the discrimination was pervasive and regular, (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position, and (5) the existence of respondeat superior liability." Weston v. Pennsylvania, 251 F.3d 420, 426 (3d Cir. 2001) (quoting Andrews v. City of Philadelphia, 895 F.2d 1469, 1482 (3d Cir. 1990)). The evidence, taken in the light most favorable to Plaintiff, indicates that she was purposefully tasered in a sexual or intimate part of her body, that she was engaged in conversations about "anal bleaching" and the adult film industry, that her personal life was repeatedly inquired into by Defendant Bogdanovic, that she was solicited to date Defendant Bogdanovic's friends on numerous occasions and even taken to the location of a "prospective suitor" while on patrol duty, that she was asked to take Defendant Bogdanovic on personal errands while on patrol duty, that Defendant Bogdanovic gave her gifts, that she was subject to derogatory and belitting comments such as being referred to as the "PMS squad" on the basis of her gender by Defendant Brink, that she was too "bubbly" for a police officer, that she was

12

criticized for being a victim of harassment by her ex-boyfriend, and that she was harassed through calls from Defendant Umberger on her home telephone number.

The conduct alleged was physically threatening at one point, unwelcome, frequent, and at times it affected her abilities to perform her job while on patrol. Harris v. Forklift Sys., Inc, 510 U.S. 17, 23 (1993) ("[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity' whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."). The intent to discriminate on the basis of sex is implicit in Plaintiff's allegations because several of the allegations involve sexual propositions by Defendant Bogdanovic and the sexually derogatory language by Defendants Brink and Umberger. Andrews, 895 F.2d at 1482 n.3. The above-enumerated statements and actions are sufficient for a jury to determine that Defendants' actions were both subjectively and objectively offensive. Finally, Plaintiff also satisfies the respondeat superior requirement of her claim. The actions alleged were those of Bogdanovic, not only Plaintiff's supervisor, but Chief of Police.[4] Andrews, 895 F.2d at 1486 ("[I]f a plaintiff proves that management-level employees had actual or constructive knowledge about the existence of a sexually hostile environment and failed to take prompt and adequate remedial action, the

---

[4]One significant difference between a Title VII claim and a § 1983 claim alleging a violation of the Equal Protection Clause is that only an employer can be liable for violating Title VII, whereas individuals can be liable in § 1983 claims. Demoret, 451 F.3d at 149 (2d Cir. 2006). The respondeat superior element of a hostile environment claim seems designed to address this Title VII liability issue, not present in § 1983, by assuring that employers are on notice of the harassment. In any event, the Court need not address the issue at this time because it is, in fact, met due to Defendant Bogdanovic's status as Chief of Police, and the issue has not been briefed by the parties.

employer will be liable.").

Accordingly, Defendants are not entitled to summary judgment on this claim.

**C. Defendant Umberger's Conduct**

Defendant Umberger argues that he should be dismissed as a defendant because Plaintiff did not lodge particular allegations of discrimination against him. In order to establish liability of an individual under § 1983, there must be evidence of personal involvement. Andrews, 895 F.2d at 1478; Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs."); Hargrave v. County of Atlantic, 262 F. Supp. 2d 393, 442 (D.N.J. 2003). In this case, Plaintiff alleges that Defendant Umberger was involved in the hostile work environment claim because he called her on her day off to berate her for not having a local phone number, attempted to have her charged with violating the chain of command, criticized her personality as too "bubbly," and blamed her for her boyfriend's actions of domestic violence. At first glance, the actions of calling Plaintiff on her day off and falsely charging her with violating the chain of command, regardless of how hostile, do not appear to be actions taken based on her gender. Nonetheless, the Court finds that in light of the totality of the circumstances, including his reference to her personality as too "bubbly," an inherently a gender-based comment, a reasonable jury could conclude that these actions occurred only because of Plaintiff's status as a woman and were thus part of the disparate treatment she suffered on that basis.

**D. Municipality Liability**

It is established that § 1983 claims will not lie against a municipality if they are based solely upon a theory of respondeat superior. Monell v. Dept. of Social Servs., 436 U.S. 658

14

(1978). The Supreme Court made clear that "municipal liability is limited to action for which the municipality is actually responsible." Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986). The plaintiff must prove that the municipality itself supported the violation of the rights alleged "through the execution of a government's policy or custom which inflicts the injury." Andrews, 895 F.2d at 1480; Carswell v. Borough of Homestead, 381 F.3d 235, 244 (3d Cir. 2004); Berg v. County of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000). A policy or custom can be established in either of two ways: "when a decision-maker possessing final authority to establish municipal policy, as determined by state law, issues an official proclamation, policy or exict," or when a practice, "though not authorized by law [is] so permanent and well settled as to virtually constitute law." Andrews, 895 F.2d at 1480; Watson v. Abington Twp., 478 F.3d 144 (3d Cir. 2007). Thus, actions of a municipal policymaker may be sufficient to establish municipal liability. Keenan v. City of Philadelphia, 983 F.2d 459, 468 (3d Cir. 1992) (holding that Police Commissioner's acquiescence to discriminatory actions were sufficient to state municipal liability because he is official policymaker). The plaintiff has the burden of showing that a policymaker is responsible for the policy or acquiescence of the custom. Andrews, 895 F.2d at 1480.

Plaintiff has specifically alleged not only that Defendant Bogdanovic acquiesced to the custom of sexual harassment at the police department, but that he played an integral part in the hostile work environment. The fact that Defendant Bogdanovic is Police Chief may establish liability on the behalf of the Township of Swatara. At this point, however, neither Plaintiff nor Defendants have addressed the applicable law on this issue. Defendants argue only that no constitutional violation can have occurred because official policies against discrimination and

15

sexual harassment were in place. Defendants have declined to address head-on Plaintiff's primary contention—that Defendant Bogdanovic is himself a policymaker, thus his alleged actions and acquiescence support a finding of liability against the Township of Swatara. The parties will be directed to address the application of the above principles at oral argument at the pretrial conference.

### E. Qualified Immunity

Lastly, Defendants argue that judgment should be granted in their favor because they are entitled to qualified immunity. The doctrine of qualified immunity applies to protect government officials from lawsuits and liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 129 S. Ct. 808, 815 (U.S. 2009) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). As stated above, Plaintiff has shown facts to support the violation of her constitutional rights by Defendants. Because the claim is one for sexual harassment in the workplace based on derogatory comments and treatment of women, including inappropriate sexual discourse, there can be no serious dispute that the right was clearly established at the time of Defendants' misconduct and that any reasonable person would have known about the existence of this right at the time of the conduct. See Andrews, 895 F.2d at 1479-80 (denying qualified immunity because right to be free from sexual harassment at the workplace was clearly established).

Accordingly, qualified immunity is not applicable to Defendants' actions in this case.

## IV. CONCLUSION

In conclusion, the Court finds that Plaintiff's § 1983 claim for a hostile work environment will not be dismissed against any Defendant. Summary judgment will be granted in favor of

Defendants on Plaintiff's claim that her probation and termination were the result of disparate treatment. In all other respects, Defendants' motion for summary judgment will be denied.

An order consistent with this memorandum follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATRINA FIALA, : | |
| Plaintiff : | |
| : | Civil Action No. 1:07-cv-02041 |
| v. : | (Chief Judge Kane) |
| : | |
| DAVID BOGDANOVIC, DONALD : | |
| BRINK, JASON UMBERGER, and : | |
| TOWNSHIP OF SWATARA, : | |
| Defendants : | |

# ORDER

**AND NOW**, on this 8th day of October 2009, upon consideration of Defendants' motion for summary judgment (Doc. No. 23), **IT IS HEREBY ORDERED THAT** the motion is **GRANTED** with respect to Plaintiff's § 1983 claim for disparate treatment in extending her probationary period and termination, but **DENIED** in all other respects. Plaintiff's § 1983 claim for a sexually harassing hostile work environment is not dismissed as against any Defendant. Summary Judgment shall be deferred pending resolution of the other claims.

      S/ Yvette Kane
      Yvette Kane, Chief Judge
      United States District Court
      Middle District of Pennsylvania